# IN THE COURT OF APPEALS OF IOWA

No. 20-0471
Filed June 17, 2020

**IN THE INTEREST OF C.B., Z.B., and Z.B.,**
**Minor Children,**

**W.B., Father,**
    Appellant,

**Y.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to three children. **AFFIRMED ON BOTH APPEALS.**

Cole J. Mayer of Macro & Kozlowski, LLP, West Des Moines, for appellant father.

Elizabeth A. Ryan of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Karl Wolle of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Parents separately appeal the termination of their parental rights to twins and a third child, all born in 2014.

## I.    *Ground for Termination*

The juvenile court terminated the parents' rights under Iowa Code section 232.116(1)(f) (2019), which requires proof of several elements, including proof the children could not be returned to parental custody. Both parents contend the State failed to prove the statutory ground. On our de novo review, we disagree.

According to the department of human services employee assigned to the case, the children came to the department's attention in late 2016, "due to concerns that" the mother was "failing to meet [their] medical needs." Specifically, the twins, born prematurely, "had a variety of medical complications." The department opened "an eligible services" case and, under the auspices of that case, transferred one of the twins to a specialized medical facility. The department also initiated services to assist the other twin and the third child as well as the mother. Because paternity testing had yet to be completed on the putative father, he did not participate in services.

Approximately one year after the "eligible services" case opened, the department sought and obtained an order formally removing the twin housed at the medical facility from the mother's custody. Meanwhile, the department determined that the twin in the mother's care had lost weight and was "fail[ing] to thrive" and the third child had yet to speak. The court adjudicated all three children in need of assistance and ordered the removal of the two remaining children from the mother's custody.

The children remained out of the parents' custody throughout the proceedings.  By the time of the termination hearing, the three children were in the same foster home.

Following the termination hearing, the juvenile court found the mother "attempted to 'check the boxes' by attending visits and medical appointments more consistently" but she "never meaningfully addressed the issues which led to the initial [department] involvement and subsequent removal."  The record supports those findings.

Although the mother testified she "would make sure" the children would "have all their needs and their appointments" met if they were returned to her custody, she admitted she had difficulty getting the children to medical appointments when they were in her care, and she conceded the children's health and speech improved after they were removed.

The reports of a court-appointed special advocate (CASA) bolster the mother's concessions.  She noted that the mother failed to attend "any of the children's therapy or doctors' appointments to understand their care needs."  She expressed concern with "the long list of missed medical appointments" in light of the "care level needs of the children."

The service provider who supervised visits spoke to the mother about the missed appointments.  She testified:

> At some points when [the mother] didn't have a car it was transportation, but other than that, most of the answers I got were that she had to see, and it just didn't work with her schedule, and she wanted us to try to work with her schedule but could never get a concrete what her whole week of a schedule looked like.

The children's medical and educational records documented significant gains following removal. For example, less than a year after the oldest child's removal, a teacher reported "awesome progress on his reading goal." And a medical report on the twin who was diagnosed with "failure to thrive" stated the child was "making tremendous progress on growth" just three months after her removal.

We are left with the department caseworker's testimony. She stated that, "[t]hroughout the two and a half years that we've been involved, [the mother] has not been able to demonstrate that she's able to meet their needs." While her testimony is relevant, it comes with baggage. Both parents expressed a belief that the caseworker viewed termination of their parental rights as a foregone conclusion. Her testimony supports their belief. First, she attempted to discredit the positive opinions of other professionals such as the mother's therapist and the visitation supervisor. After conceding the mother was discharged from therapy services for having "met her goals," she questioned whether the mother truly could have satisfied the goals within the time frame. And, after attending only two of the mother's numerous visits with her children, she attempted to undermine the visitation supervisor's testimony that the mother had positive interactions with them. Finally, she criticized the mother for failing to attend all the children's medical appointments but failed to mention that the department curtailed the mother's participation in those appointments. She also made no mention of the mother's completion of "care training" for the twin with severe disabilities—a fact documented in a CASA report. For these reasons, we afford the caseworker's testimony limited weight. Nonetheless, the record contains clear and convincing

evidence to support termination of the mother's parental rights under Iowa Code section 232.116(1)(f).

We turn to the father. The juvenile court gave several reasons to support its determination that the children could not be returned to his custody, among them the fact that he "never actually parented" them. We find support for the finding.

The father conceded he only cared for the twins on an unsupervised basis while their mother was visiting her mother in the hospital and he only did so a "[c]ouple hours at a time or so." Although he exercised supervised visits with the children after the child-in-need-of-assistance petition was filed, he acknowledged those visits were curtailed five months before the termination hearing, based on his unauthorized attempts to record the visits.

The CASA reported that the father did not "recognize the medical needs of the children and the need for so many doctors and appointments." She questioned "whether he underst[ood] what behaviors [were] developmentally appropriate for his children and how to keep them safe." The record contains clear and convincing evidence to support termination of the father's parental rights under section 232.116(1)(f).

## II.  *Reasonable Efforts*

The department is obligated to make reasonable efforts to reunify parent and child. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Both parents contend the department failed to satisfy the obligation.

The mother argues the department failed to evaluate her apartment to determine whether it was appropriate for in-home visits. She preserved error by

formally requesting in-home expanded visits. Specifically, she asserted that the department failed to "assess the home for safety or visits . . . despite requests to the [department] [case]worker for home visits." In a permanency order, the juvenile court denied the request for expanded visits and ordered the State to file a termination petition.

We are persuaded that the department satisfied its reasonable-efforts mandate with respect to the mother. The department afforded her weekly supervised visits with the children at locations other than her apartment. Although the caseworker failed to inspect the mother's apartment when she first requested the service and, according to the mother, went to her old apartment rather than her new one when she ultimately followed up, her failure to do so became a moot point when the juvenile court denied her request for expanded visits.

Turning to the father, he contends he was denied the opportunity to attend the children's medical appointments. The record is unclear on this question. Although he testified he was not allowed to attend physical therapy sessions for the twin at the specialized medical facility, he also stated he had no problem with the staff there. Be that as it may, he acknowledged the department provided a referral for subsidized housing, "some referrals" for therapy, and visits with the children until he began recording them. We conclude the department satisfied its reasonable-efforts mandate with respect to the father.

## III.    *Best Interests*

The father argues termination was not in the children's best interests. *See* Iowa Code § 232.116(2). Given his limited role in the children's lives and the discomfort that one of the twins showed during supervised visits with him, we agree

with the juvenile court that termination was in the children's best interests.

## IV.    Parent-Child Bond

The mother contends her parental rights should not have been terminated in light of the bond she shared with the children. *See id.* § 232.116(3)(c). There was indeed a maternal bond; the service provider who supervised visits testified the children "seem[ed] excited to see her, and they interact[ed] with her" during visits. At the same time, there is no question that the children's health and development were compromised in her care. Accordingly, we conclude the juvenile court appropriately declined to grant this permissive exception to termination.

## V.    Additional Time

Both parents argue they should have been afforded an additional six months to work toward reunification. For the stated reasons, we conclude an additional six-month extension was not warranted.

We affirm the termination of parental rights to the children.

**AFFIRMED ON BOTH APPEALS.**